UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THE RIDGEFIELD FOUNDATION, INC.,

         Plaintiff,

   -against-

MARCELO LEIPZIGER,

         Defendant.

---

07 CV 5965

Judge Hellerstein

**COMPLAINT**

JUN 2 2 2007

U.S.D.C. S.D.N.Y.
CASHIERS

   Plaintiff The Ridgefield Foundation, Inc., by its attorneys Cadwalader, Wickersham & Taft LLP, for its Complaint against defendant Marcelo Leipziger, alleges as follows:

### THE PARTIES

   1. Plaintiff The Ridgefield Foundation, Inc. ("plaintiff" or the "Foundation") is a New York not-for-profit corporation having its sole office at 570 Lexington Avenue in the City, County and State of New York, within the Southern District of New York.

   2. Defendant Marcelo Leipziger is a citizen and resident of Switzerland. Defendant entered into and subsequently ratified and reconfirmed an agreement, of which plaintiff is the third-party beneficiary and which requires as defendant's performance the payment by defendant of sums of money to plaintiff in New York. These and other contacts of defendant with New York, more fully described below, have created an ongoing relationship of defendant with plaintiff in New York, and constitute defendant's transaction in New York of business out of which this action arises.

## JURISDICTION AND VENUE

3. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332(a)(2) and § 302(a)(1) of the New York Civil Practice Law and Rules.

4. The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(2) and (3).

## FACTS

### The Venthone Agreement and the Venthone Property

6. Defendant is a nephew of the late Henry J. Leir ("Mr. Leir"), who with his wife, the late Erna D. Leir ("Mrs. Leir"), established the Foundation during their lifetimes.

7. On September 18, 1989, defendant entered into a written contract (the "Venthone Agreement" or the "Agreement") with Mr. Leir, a copy of which is annexed as Exhibit A. Under the Venthone Agreement defendant, in consideration of Mr. Leir's agreement to sell and convey to defendant certain improved real estate located in Mollens, Canton of Vallais, Switzerland (the "Venthone Property"), agreed to pay the Foundation a purchase price of $1,250,000 for the Venthone Property.

8. The Venthone Agreement requires defendant to pay the purchase price to the Foundation, then located at 641 Lexington Avenue, New York, New York 10022, and now located at 570 Lexington Avenue, New York, New York 10022. Payments are required in three stages, the first of which was payment of $5,000 upon the signing of the Agreement. Second, under paragraph 2(b)(2) of the Agreement, defendant agreed to pay $200,000 to the Foundation in New York upon defendant's receipt of at least $200,000 from the Estates of

Mr. Leir or Mrs. Leir. Third, under paragraph 2(b)(3) of the Agreement, defendant agreed to pay the balance of $1,045,000 upon his receipt of an amount equal to or in excess of $1,045,000 from certain trusts created under the Wills of Mr. Leir or Mrs. Leir.

9. The initial payment of $5,000 required by paragraph 2(b)(1) of the Venthone Agreement was made by or on behalf of defendant to the Foundation in New York, New York on or about November 3, 1989.

10. On or about April 1, 1997, defendant sent to Mr. Leir in New York, New York a letter, a copy of which is annexed as Exhibit B, reconfirming and ratifying the Venthone Agreement.

11. In his April 1, 1997 letter to Mr. Leir, defendant reiterates that the Venthone Agreement "is still in place whereby from future inheritance(s)" defendant is obligated to pay $1,250,000 for the Venthone Property. On or about April 9, 1997, as requested by defendant in his April 1, 1997 letter, Mr. Leir gave additional consideration for the Venthone Agreement, as ratified and confirmed by defendant's April 1, 1997 letter, by cancelling a usufruct in the Venthone Property that he (Mr. Leir) had reserved to himself.

12. Upon information and belief, on or about October 5, 2001, defendant sold the Venthone Property for a sale price which is unknown to plaintiff but which, on the basis of a mortgage placed upon the Venthone Property at that time, plaintiff believes to have been in excess of 1,000,000 Swiss francs (approximately $617,780 in U.S. dollars at that time).

### Erna D. Leir - Will

13.   Mrs. Leir died on January 17, 1996, a resident of and domiciled in the City, County and State of New York, within the Southern District of New York.

14.   Mrs. Leir left a Last Will and Testament dated November 13, 1987, as amended by four Codicils thereto dated February 8, 1988, December 6, 1988, February 16, 1989 and April 21, 1989 (the said Last Will and Testament and four Codicils being hereinafter collectively referred to as "Mrs. Leir's Will").

15.   Mrs. Leir's Will was admitted to probate by the New York State Surrogate's Court, New York County, on April 8, 1996.

### The Estate of Henry J. Leir – Litigation in the New York State Courts

16.   Mr. Leir died on July 15, 1998, a resident of and domiciled in the City, County and State of New York, within the Southern District of New York.

17.   Mr. Leir left a Last Will and Testament dated April 27, 1998, which is hereinafter referred to as "Mr. Leir's 1998 Will."

18.   On or about July 21, 1998, the then Preliminary Co-Executors (now Executors) of Mr. Leir's 1998 Will filed their Petition for probate of Mr. Leir's 1998 Will in the New York State Surrogate's Court, New York County (the "Probate Proceeding").

19.   On or about May 10, 1999, in response to the Preliminary Co-Executors' Petition, defendant and certain other individuals, through their New York counsel, filed Verified Amended Objections to Probate of Mr. Leir's 1998 Will in the New York County Surrogate's Court.

20. On or about November 1, 2000, the Preliminary Co-Executors filed an action in the New York State Supreme Court, New York County (the "Declaratory Judgment Action"), against defendant and three other individuals, seeking a declaratory judgment that a certain letter signed by Mr. and Mrs. Leir (the "1988 Letter") did not constitute an enforceable agreement, or at least not enforceable by defendant or the other individuals.

21. On or about January 3, 2001, defendant and the other individuals, through their New York counsel, served their Answer and Counterclaims in the Declaratory Judgment Action, in which they claimed, among other things, that the 1988 Letter was a valid contract, enforceable by them, pursuant to which they sought to impose a constructive trust upon Mr. Leir's Estate according to the terms of an earlier Last Will and Testament of Mr. Leir dated November 13, 1987, as amended by four Codicils thereto dated February 8, 1988, December 6, 1988, February 16, 1989 and April 6, 1989 (the said Last Will and Testament and four Codicils being mirror-images of Mrs. Leir's Will, and being hereinafter collectively referred to as "Mr. Leir's 1987 Will").

22. Upon motion of defendant and the other individuals, through their New York counsel, the New York County Supreme Court, by order subsequently affirmed by the New York Appellate Division, First Department, transferred the Declaratory Judgment Action to the New York County Surrogate's Court. At no time did defendant or the other individuals contest the jurisdiction of the New York Courts over them.

### The Settlement Agreement

23. After extensive motion practice and discovery over the course of more than four years, during all of which time defendant was actively represented by his New York counsel in the above-described litigation in the New York Courts, defendant, plaintiff

Foundation, and a number of other parties interested in Mr. and Mrs. Leir's Estates, through their respective New York counsel and with the assistance of New York County Surrogate Renee R. Roth and members of her staff, negotiated a settlement of the Probate Proceeding, the Declaratory Judgment Action, and a number of other matters. These negotiations were carried on for several years in the City, County and State of New York, within the Southern District of New York, and resulted in a Settlement Agreement dated as of July 12, 2004 (the "Settlement Agreement"), copies of the pertinent sections of which are annexed as Exhibit C. The Settlement Agreement was executed by plaintiff and defendant herein, among a number of other parties, and was filed with the New York County Surrogate's Court.

24. The Settlement Agreement's choice of law provision (Section D.15) provides that the Settlement Agreement shall be construed in accordance with and governed by the laws of the State of New York.

25. Section A of the Settlement Agreement provides, among other things, for a payment by Mr. Leir's Estate of $6,150,000 together with certain other amounts (collectively, the "Section A Settlement Amount"), of which, upon information and belief, defendant has received a portion.

26. The Settlement Agreement instructs the Preliminary Co-Executors to pay, and they did pay, the Section A Settlement Amount to defendant's New York attorneys, Holland & Knight LLP. On or about August 29, 2005, Holland & Knight LLP received the Section A Settlement Amount in New York, New York on behalf of defendant, other clients, and itself.

27. The Preliminary Co-Executors' payment of the Section A Settlement Amount to Holland & Knight LLP in New York, New York pursuant to the Settlement Agreement was a necessary prerequisite to defendant's obligation to perform under the Venthone Agreement.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract)

28. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 27 hereof, as if fully set forth herein.

29. Section A.8(a)(iii)(A) of the Settlement Agreement provides that upon payment of the Section A Settlement Amount, defendant will be deemed to have received the full amount of $200,000 specified in paragraph 2(b)(2) of the Venthone Agreement.

30. By reason of the foregoing, the condition precedent to defendant's obligation to pay plaintiff $200,000 pursuant to paragraph 2(b)(2) of the Venthone Agreement has been fulfilled in the City, County and State of New York, within the Southern District of New York.

31. Despite the fulfillment of the condition precedent set forth in paragraph 2(b)(2) of the Venthone Agreement, defendant has failed to perform and has breached the Venthone Agreement in that he has failed and refused to pay the Foundation the sum of $200,000 pursuant to the Venthone Agreement, although payment has been demanded of him by plaintiff.

32. Defendant is liable to plaintiff for $200,000, with interest from August 29, 2005.

## SECOND CLAIM FOR RELIEF
### (Breach of Contract)

33. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 27 hereof, as if fully set forth herein.

34. As provided by section A.4(b) of the Settlement Agreement, $3,700,000 of the Section A Settlement Amount ($3,036,000 principal amount[1] and $664,000 interest) was paid by Mr. Leir's Estate in satisfaction of the claims of defendant and others that they were entitled to cash legacies under paragraph THIRD.B.1 and .2 of Mr. Leir's 1987 Will pursuant to enforcement of the 1988 Letter as a contract.

35. As more fully set forth below, the principal amount mentioned in the preceding paragraph 34 hereof, which is referred to in the Settlement Agreement as "Cash Payments" or "Cash Legacies" (see Settlement Agreement, section A.4(b) and Exhibit B, at page 9 and last page of Exhibit C hereto), in fact represents payments that Article THIRD of Mr. Leir's 1987 Will directed Mr. Leir's Trustees to make to defendant and others out of a residuary trust provided for by the said paragraph THIRD of Mr. Leir's 1987 Will (the "Residuary Trust").

36. With specific reference to defendant, paragraph THIRD.B.1(i) and .2 of Mr. Leir's 1987 Will provides in pertinent part as follows:

> THIRD: I give, devise and bequeath the rest, residue and remainder of my estate, including any lapsed legacies or devises hereunder, all of which is herein referred to as my "Residuary Estate", to my Trustees, IN TRUST, to hold, manage, invest and reinvest the same upon the following terms and conditions:
>
> \* \* \* \* \*
>
> B.    1. If my Wife shall not survive me, my Trustees shall distribute the following amounts, subject, however, to Subparagraph B.2. of this Article THIRD, to each of the following named individuals and to each of the individuals who shall constitute the class described as issue, per stirpes, as shall be living at the time of my death:

---

[1] In Exhibit B to the Settlement Agreement (see Exhibit C to this Complaint, last page), this figure is shown as $3,030,000.

>   (i)   To MARCELO LEIPZIGER, the sum of Two Million ($2,000,000) Dollars;
>
>   * * * * *
>
>   2. Each of the respective legacies provided for in clauses (i) through (xii) of Subparagraph B.1. of this Article THIRD shall be reduced by the aggregate amount of all gifts given by me or by my Wife to each individual named or described as issue in such clauses, and to such individual's issue, spouse and parents, after December 10, 1986 and prior to the death of the survivor of me and my Wife.

37.  During Mr. and Mrs. Leir's lifetimes, defendant and members of his family received cash gifts totaling $360,000 from Mr. and Mrs. Leir, thereby reducing the cash payment from the Residuary Trust provided for defendant by Mr. Leir's 1987 Will from $2,000,000 to $1,640,000.

38.  $1,640,000 of the $3,036,000 principal amount attributable to all cash payments by section A.4(b)(i) of the Settlement Agreement was 100% of defendant's cash payment from the Residuary Trust, as specifically provided by paragraph THIRD.B.1(i) and .2 of Mr. Leir's 1987 Will, quoted above.

39.  Accordingly, defendant has received, or is to be deemed to have received, $1,640,000 of the $3,036,000 of the Section A Settlement Amount allocated to cash payments from Mr. Leir's Residuary Trust according to the terms of Mr. Leir's 1987 Will, pursuant to enforcement of the 1988 Letter as a contract as provided by section A.4(b) of the Settlement Agreement.

40.  Defendant has thus received, or is to be deemed to have received, "an amount . . . in excess of [$1,045,000] from [a] trust[] created under" Mr. Leir's 1987 Will, as provided by paragraph 2(b)(3) of the Venthone Agreement.

41. By reason of the foregoing, the condition precedent to defendant's obligation to pay plaintiff $1,045,000 pursuant to paragraph 2(b)(3) of the Venthone Agreement has been fulfilled in the City, County and State of New York, within the Southern District of New York.

42. Despite the fulfillment of the condition precedent set forth in paragraph 2(b)(3) of the Venthone Agreement, defendant has failed to perform and has breached the Venthone Agreement in that he has failed and refused to pay the Foundation the sum of $1,045,000 pursuant to the Venthone Agreement, although payment has been demanded of him by plaintiff.

43. Defendant is liable to plaintiff for $1,045,000, with interest from August 29, 2005.

### THIRD CLAIM FOR RELIEF
### (Breach of Contract; Alternative to Second Claim for Relief)

44. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 27 hereof, as if fully set forth herein.

45. Section A.8(a)(iii)(B) of the Settlement Agreement provides that upon payment of the Section A Settlement Amount, defendant will be deemed to have received an additional amount of $762,000, which amount is "deemed, for purposes of the [claims asserted herein], to be the discounted present value of a fraction (shown in Exhibit B [to the Settlement Agreement]) of [defendant's] remainder interest [in a trust] under paragraph FOURTH (B)[(1)](i) of the 1987 Will and Codicils of Henry Leir pursuant to the enforcement of the 1988 Letter as a contract."

46. Section A.4(c) and Exhibit B to the Settlement Agreement (see Exhibit C hereto, page 10 and last page) show that the fraction of defendant's aforesaid remainder interest, of which the $762,000 is the deemed discounted present value and which defendant is deemed to have received upon payment of the Section A Settlement Amount on August 29, 2005, is $1,394,304.49:

$$\frac{\text{Deemed to have received}}{\text{Actual}} \times 100\% = \begin{pmatrix} \text{Defendant's share of cash} \\ \text{equivalent in lieu of} \\ \text{remainder} \end{pmatrix}$$

$$\frac{762,000}{2,450,000^2} \times 4,483,000 = 1,394,304.49$$

47. Plaintiff repeats and realleges the allegations contained in paragraphs 40 through 43 hereof, as if fully set forth herein.

WHEREFORE, plaintiff The Ridgefield Foundation, Inc. demands judgment against defendant Marcelo Leipziger:

A. On the First Claim for Relief, for the sum of $200,000, with interest from August 29, 2005; and

B. On the Second or Third Claim for Relief, for the sum of $1,045,000, with interest from August 29, 2005; and

C. Awarding plaintiff its costs and disbursements of this action; and

---

[2] In Exhibit B to the Settlement Agreement (see Exhibit C to this Complaint, last page), this figure is shown as $2,456,000. Cf. fn.1 to ¶ 34 hereof, supra.

    D.    Granting plaintiff such other relief as the Court may deem just and proper.

Dated: New York, New York
June 22, 2007

    CADWALADER, WICKERSHAM & TAFT LLP
Attorneys for Plaintiff The Ridgefield Foundation, Inc.

By: *Terence F. Gilheany*
Terence F. Gilheany (TG9790)

One World Financial Center
New York, New York 10281
Telephone: (212) 504-6000