SETTLEMENT AGREEMENT

This Settlement Agreement, dated as of July 12, 2004 (the "Settlement Agreement") is entered into by and among: (1) the parties described and defined below as the Section A Parties (hereinafter the "Section A Parties"); (2) the parties described and defined below as the Section B Parties (hereinafter the "Section B Parties"); (3) the parties described and defined below as the Section C Parties (hereinafter the "Section C Parties"); (4) The Ridgefield Foundation, Inc. and The Leir Foundation, Inc. (together the "Foundations"); (5) Arthur S. Hoffman and Margot Gibis as Preliminary Co-Executors (together the "Preliminary Co-Executors") of the Last Will and Testament of Henry J. Leir, dated April 27, 1998 (the "Propounded Will"); and (6) Ronald P. Stanton and Marguerite M. Riposanu, as Co-Executors of the Last Will and Testament of Erna D. Leir dated November 13, 1987 (as amended by four codicils), and Adrian Shelby as Executrix of the Estate of Jerome Shelby who was an executor of Erna D. Leir's estate until his death (the "Erna Leir Executors"). The foregoing parties are collectively referred to hereinafter as the "Settling Parties." Except as otherwise specified herein, the Section A Parties are not bound by anything in Sections B and C of this Settlement Agreement. Except as otherwise specified herein, the Section B Parties are not bound by anything in Sections A and C of this Settlement Agreement. Except as otherwise specified herein, the Section C Parties are not bound by anything in Sections A and B of this Settlement Agreement.

WHEREAS, Erna D. Leir ("Erna Leir") died on January 17, 1996, a resident of New York City, New York County, New York, leaving a Will dated November 13, 1987, as amended by four Codicils thereto, which Will and Codicils were duly admitted to probate by the Surrogate's Court, New York County (the "Surrogate's Court"), on April 8, 1996 (<u>Probate</u>

1

571022v9

Proceeding, Will of Erna D. Leir, Deceased, File No. 553/96) as the Last Will and Testament of Erna D. Leir (the "Erna Leir Will"); and

WHEREAS, the Erna Leir Executors sought judicial approval of the First and Final Account of their proceedings in the estate of Erna Leir (the "Erna Leir First and Final Account"), covering the period January 17, 1996 through March 6, 2002, which Account is on file in the Surrogate's Court, but as to which Account action has been stayed pending the resolution of the matters which are the subject of this Settlement Agreement; and

WHEREAS, the Erna Leir Executors intend to file in the Surrogate's Court either (i) a Supplemental First and Final Account of their proceedings in the estate of Erna Leir, covering the period March 7, 2002 through March 31, 2004, or alternatively (ii) an Amended First and Final Account of their proceedings in the estate of Erna Leir, covering the period from Erna Leir's death (January 17, 1996) through March 31, 2004, amended, however, only to the extent of including transactions for the period March 7, 2002 through March 31, 2004 (the Erna Leir First and Final Account as so supplemented or such Amended First and Final Account being hereinafter referred to as the "Erna Leir Amended Account"); and

WHEREAS, Henry J. Leir ("Henry Leir") died on July 15, 1998, a resident of New York City, New York County, New York, leaving the Propounded Will and a substantial estate (the "Henry Leir Estate"); and

WHEREAS, on or about July 21, 1998, the Preliminary Co-Executors filed their Petition for the probate of the Propounded Will in the Surrogate's Court (Probate Proceeding, Will of Henry J. Leir, Deceased, File No. 2655-98) (the "Probate Proceeding"); and

WHEREAS, on or about May 10, 1999, Robert Sitkoff, Jeremy Sitkoff and Marcelo Leipziger (the "Objectants") filed Verified Amended Objections to Probate of the Propounded Will on the grounds of undue influence and lack of testamentary capacity (the "Objections"); and

WHEREAS, on November 1, 2000, the Preliminary Co-Executors commenced an action against Robert Sitkoff, Jeremy Sitkoff, Marcelo Leipziger, and Marcelle Quinton (the "Individual Defendants") and against the Attorneys General of New York and Connecticut for a declaratory judgment (the "Declaratory Judgment Action") by filing a Complaint (the "Complaint") in New York State Supreme Court, New York County (the "Supreme Court") (Hoffman, et al. v. Sitkoff, et al., Index No. 604741/00), which Declaratory Judgment Action concerns a letter signed by Henry Leir and by his wife Erna Leir, dated February 8, 1988 (the "1988 Letter"), which the Individual Defendants assert evidences a binding agreement pursuant to which each of Henry Leir and Erna Leir agreed not to change their respective mirror-image November 1987 Wills (and mirror-image First Codicils thereto) without the written consent of the other; and

WHEREAS, the Preliminary Co-Executors seek in the Declaratory Judgment Action a declaration that, among other things, the 1988 Letter is unenforceable; and

WHEREAS, the Individual Defendants served an Answer in the Declaratory Judgment Action dated January 3, 2001 and therein asserted Counterclaims (the "Answer and Counterclaims") for a declaration that the 1988 Letter is valid and enforceable and for related relief; and

WHEREAS, the Preliminary Co-Executors filed their Reply to the Counterclaims in the Declaratory Judgment Action on or about February 6, 2001; and

WHEREAS, by order entered on or about March 19, 2001 (the "3/19/01 Order"), the Supreme Court (i) transferred the Declaratory Judgment Action to the Surrogate's Court, which has since exercised jurisdiction therein, and (ii) denied the Preliminary Co-Executors' motion for summary judgment; and

WHEREAS, on or about August 1, 2002, the Appellate Division, First Department, unanimously affirmed the 3/19/01 Order; and

WHEREAS, extensive motion practice and discovery has taken place in the Declaratory Judgment Action, and extensive further discovery is pending; and

WHEREAS, Alan Docter and Susan Richter have appeared in the Declaratory Judgment Action and have notified the Preliminary Co-Executors that they assert the same claims asserted by the Individual Defendants (the Individual Defendants, Mrs. Richter, Mr. Docter and Samuel Sitkoff, Esq. being referred to together as the "Section A Parties"); and

WHEREAS, on October 29, 2002, the Surrogate's Court stayed all discovery in the Probate Proceeding and the Declaratory Judgment Action, pending settlement negotiations directed by the Surrogate's Court; and

WHEREAS, the Foundations were established by Henry Leir during his life and stand to benefit under the propounded Will; and

WHEREAS, the Preliminary Co-Executors, the Section A Parties, the Foundations, and the Charities Bureau of the New York Attorney General's Office have engaged in extensive settlement negotiations concerning potential settlement of the Probate Proceeding, the Declaratory Judgment Action, and of all disputes concerning the Henry Leir Estate and the estate of Erna Leir (the "Erna Leir Estate") (but not any trusts arising under the Erna Leir Will), which

negotiations were supervised until December 2003 by Joseph M. Samulski, Esq., then Chief Court Attorney of the Law Department of the Surrogate's Court; and

WHEREAS, the Preliminary Co-Executors, at the direction of Mr. Samulski, brought before the Surrogate's Court by service of a Citation (the "Citation") other parties who might be affected by the ultimate outcome of either the settlement negotiations or the litigation of the Declaratory Judgment Action and who had not yet filed claims or objections in the Declaratory Judgment Action or the Probate Proceeding; and

WHEREAS, in response to the Citation, Samuel Sitkoff has appeared in the Declaratory Judgment Action pro se, by Notice of Appearance dated September 24, 2003, and by Response sworn to on October 13, 2003 has joined in the Declaratory Judgment Action and adopted, in their entirety, the Answer and Counterclaims previously served and filed on behalf of the Individual Defendants; and

WHEREAS, in response to the Citation, Jacques E. Lennon, Barbara Lomnitz as Executrix of the Estate of Eric Lomnitz, Peter Lipton individually and as parent of each of Jacob Edward Lipton and Jonah Hugh Lipton, Marc Strauss, Giselle Strauss Eyerman, Robert Lomnitz, and David Lomnitz (together the "Section B Parties"), have appeared through counsel in the Declaratory Judgment Action; and

WHEREAS, Karen Shelby Anderson, P. Austin Shelby, Rachel G. Hoffman, and Douglas H. Hoffman (the "Section C Parties") were duly served with the Citation, and take under the Propounded Will, and did not appear upon the return of the said Citation, nor subsequently in the Declaratory Judgment Action; and

571022v9

WHEREAS, the Declaratory Judgment Action is pending, including without limitation, (a) the Complaint, (b) the Answer and Counterclaims, and (c) the Motion to Suspend Preliminary Letters Testamentary by the Individual Defendants; and

WHEREAS, the Objections remain pending in the Probate Proceeding; and

WHEREAS, the Settling Parties, in order to resolve certain matters in controversy among them, have reached a compromise and settlement related to the issues in dispute among them with respect to the Erna Leir Estate, the Henry Leir Estate, the 1988 Letter, the Declaratory Judgment Action, the Objections, the distribution and the settlement of the First and Final Account of the Henry Leir Estate covering the period from Henry Leir's death (July 15, 1998) through March 31, 2004 (the "Henry Leir Account"), and the settlement of the Erna Leir Amended Account (but not any trusts under the Erna Leir Will); and

WHEREAS, the Preliminary Co-Executors hereby agree that the Section A Parties will receive pursuant to the terms and conditions of this Settlement Agreement an aggregate sum which shall be a percentage of the maximum amount (as calculated by the Preliminary Co-Executors) which the Section A Parties could have recovered if they were completely successful in enforcing their contractual claims based upon the 1988 Letter; and the Preliminary Co-Executors further agree that the Section B Parties will receive pursuant to the terms and conditions of this Settlement Agreement an aggregate sum which shall be the same percentage (as the Section A Parties will receive) of the maximum amount (as calculated by the Preliminary Co-Executors) which the Section B Parties could have recovered if they were completely successful in enforcing contractual claims based upon the 1988 Letter; and

WHEREAS, the Settling Parties have agreed to execute, deliver, and comply fully with the terms and provisions of this Settlement Agreement;

571022v9

NOW, THEREFORE, in consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Settling Parties agree and covenant as follows:

## SECTION A

1. <u>Section A Parties</u>. The parties bound by the provisions set forth in this Section A are the individuals described below in paragraph 2 of this Section A (the "Section A Parties"), the Foundations, the Preliminary Co-Executors, and Holland & Knight LLP.

2. <u>Relationships to Henry Leir and Erna Leir</u>. Each of the Section A Parties represents and warrants that the following is true and correct as to himself or herself or his or her children, as the case may be:

| NAME AND ADDRESS | NATURE OF RELATIONSHIP TO HENRY LEIR AND/OR ERNA LEIR |
|---|---|
| Samuel Sitkoff<br>64 Highland Avenue<br>Roslyn, New York 11576 | He has no blood relationship to Henry or Erna Leir, but was married to Deborah Sitkoff (deceased) who was a niece of Henry Leir. |
| Robert Sitkoff<br>1238 W. Fletcher Street, Unit E<br>Chicago, IL 60657 | Robert Sitkoff is a son of Deborah Sitkoff, who was a niece of Henry Leir and who predeceased Henry Leir. |
| Jeremy Sitkoff<br>2450 N. Southport Avenue<br>Apartment 302<br>Chicago, IL 60614 | Jeremy Sitkoff is a son of Deborah Sitkoff, who was a niece of Henry Leir and who predeceased Henry Leir. |
| Marcelo Leipziger<br>Fontvielle<br>Chemin de Simplemont, 1<br>CH-1005 Lausanne,<br>Switzerland | Marcelo Leipziger is a nephew of Henry Leir. |
| Marcelle Quinton<br>825 Fifth Avenue<br>New York, NY 10021 | Marcelle Quinton is a niece of Henry Leir. |

571022v9

| NAME AND ADDRESS | NATURE OF RELATIONSHIP TO HENRY LEIR AND/OR ERNA LEIR |
|---|---|
| Alan Docter<br>100 Worth Avenue<br>Palm Beach, Florida 33480 | Alan Docter is the son of Armin Docter, who was a first cousin of Erna Leir. |
| Susan Richter<br>505 East 79th Street<br>Apartment 19E<br>New York, NY 10021 | Susan Richter is the daughter of Ruth Lomnitz, who was a first cousin of Erna Leir. |

3. <u>The Section A Settlement Amount</u>. The claims of the Section A Parties shall be settled by payment from the Henry Leir Estate of a total sum comprised of: (i) $6,150,000 to be paid to Holland & Knight LLP (as escrow agent) for the Section A Parties; plus (ii) attorneys' fees to be paid to Holland & Knight LLP not to exceed $1,900,000 (together, the "Section A Settlement Amount"); plus (iii) any additional amount specified in paragraph 5 of this Section A; plus (iv) any additional amount specified in paragraph 10 of this Section A. As a condition precedent to payment of the Section A Settlement Amount and any such additional amounts pursuant to paragraph 5 and paragraph 10 of this Section A, all of the conditions described in Section D must be satisfied and the Objections must be withdrawn by the Objectants with prejudice, subject to the obligation of the Henry Leir Estate to pay the Section A Settlement Amount and any such additional amounts pursuant to paragraph 5 and paragraph 10 of this Section A. The Section A Settlement Amount and any additional amounts as specified in paragraph 5 and paragraph 10 of this Section A shall be paid by Margot Gibis and Arthur Hoffman as Executors of the Henry Leir Estate within five (5) business days after the admission to probate of the Propounded Will and the issuance of permanent Letters Testamentary to the Preliminary Co-Executors (the "Payment Date").

571022v9

4.   **Settlement Amount Components.** The Section A Settlement Amount shall consist of the following:

To:   **(a) Holland & Knight LLP**

| | |
|---|---:|
| (i) in full payment for actual legal services rendered and disbursements.................................................................................... | $1,700,000 |
| (ii) in full payment for such additional legal services and disbursements as are reasonably and necessarily incurred, in an amount not to exceed............................................................................ | $ 200,000 |

Holland & Knight LLP agrees that it will not seek to recover any additional fees from any persons, other than its clients, based upon any matter covered, directly or indirectly, by this Agreement.

The Section A Parties represent and warrant that Holland & Knight LLP is the only law firm, attorney, entity or individual which represented the Section A Parties and is entitled to legal fees and expenses in connection with the Section A Settlement Amount and any matters covered by this Settlement Agreement and/or relating to the Declaratory Judgment Action and/or the Henry Leir Estate and/or the Erna Leir Estate and/or the Foundations and/or the Preliminary Co-Executors.

All of the parties confirm and agree that the legal fees being paid hereunder are in recognition of the said attorneys' efforts in resolving difficulties involved in the Henry Leir Estate and enhancing and facilitating the administration of the Henry Leir Estate.

**(b) Holland & Knight LLP as escrowee for the Section A Parties**

In satisfaction of the contractual claims of the Section A Parties that they were entitled to cash payments under the 1988 Letter, plus the interest thereon as follows:

| | | | |
|---|---:|---|---:|
| (i) Cash Payments | $3,036,000 | | |
| (ii) Interest | 664,000 | ................ | $3,700,000 |

(c) Holland & Knight LLP as escrowee for the Section A Parties

In satisfaction of the balance of their contractual claims under the 1988 Letter.................................................................... $2,450,000

All of the parties confirm and acknowledge that although all parties are consenting to the withdrawal of the Objections with prejudice, and to the probate of the Propounded Will, no portion of the settlement is allocated or attributable thereto and the parties stipulate that the claims based upon such Objections have a zero settlement value.

5.  Additional Amount. Within 10 days after this Settlement Agreement is fully executed by all of Settling Parties and delivered to counsel for the Preliminary Co-Executors (the "Settlement Date"), the Preliminary Co-Executors shall invest assets of the Henry Leir Estate in an amount equal to $3,114,000 in 6 month maturity U.S. Treasury Bills (the "Section A Fund Amount"), and upon maturity thereof shall re-invest the proceeds thereof as the Section A Parties shall direct in writing. Such Treasury Bills may be purchased in the primary or secondary market. Such Section A Fund Amount, as it may have appreciated or diminished in value, together with any dividends, interest, or other amounts earned thereon, from the date it is so invested, shall be delivered to Holland & Knight LLP on the Payment Date in full satisfaction of the Section A, paragraphs 4(c) and 4(b)(ii) amounts. Computed beginning as of May 1, 2004, $3,036,000 of the Section A Settlement Amount shall accrue interest at the rate of 6% per annum, simple interest, to be determined on the basis of the actual number of days elapsed out of a 365-day year, and such amount, together with interest earned thereon computed as provided herein, shall be delivered to Holland & Knight LLP on the Payment Date in full satisfaction of the Section A, paragraph 4(b)(i) amount. In the event that the conditions described in Section D are not satisfied, with the result that the Preliminary Co-Executors are not obligated to pay the Section A Settlement Amount on the Payment Date, there shall be no right in anyone other than

571022v9

the Preliminary Co-Executors and the Henry Leir Estate to receive: (i) any portion of the dividends, interest, or other amounts earned pursuant to this paragraph, or (ii) any appreciation in value of the Section A Fund Amount.

6. <u>Charitable Lead Trusts Accountings</u>. Arthur S. Hoffman agrees that he will cause accountings of the charitable lead trusts established under the Erna Leir Will to be furnished to the Section A Parties and Holland & Knight LLP no later than 150 days after the Settlement Date, which accountings shall cover the affairs of such trusts from their inception until March 31, 2004, and thereafter shall furnish to the Section A Parties, at least annually, trust rest statements showing the current inventory and fair market values of the principal and income of the charitable lead trusts established under the Erna Leir Will, and all receipts and disbursements of principal and income for the previous 12 months.

7. <u>Section A Releases</u>. (a) Upon the Payment Date and the payment of the Section A Settlement Amount plus any additional amounts as specified in paragraph 5 of this Section A, each of the Section A Parties, on his or her own behalf and on behalf of his or her heirs, successors and assigns (collectively, the "Section A Releasors"), hereby: releases the Henry Leir Estate, the Preliminary Co-Executors, the Foundations, the Erna Leir Estate, and the Erna Leir Executors, including each of the officers, directors, employees, heirs, successors, and assigns of the foregoing (collectively, the "Estate Releasees"), from all claims, causes of action, suits, debts, dues, sums of money, accounts, bonds, bills, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, demands and liabilities of any type in law or in equity that the Section A Releasors or any one or more of them has or ever had or may have against the Estate Releasees or any one or more of them at any time through and including the date of payment of the aforesaid amounts, except as set forth in paragraph 8 of this

11

Section A, and except for claims that may otherwise arise under this Settlement Agreement; but reserving, nevertheless, all of his or her rights, if any, with respect to trusts under the Erna Leir Will in which he or she has or may have an interest, beneficial, fiduciary or otherwise, and all rights to any payment of an additional amount as specified in paragraph 10 of this Section A.

(b) Upon the Payment Date and the payment of the Section A Settlement Amount plus any additional amounts as specified in paragraph 5 of this Section A, the Preliminary Co-Executors, on their own behalf and on behalf of all successors and assigns of the Preliminary Co-Executors (collectively the "Estate Releasors") and the Erna Leir Executors, on their own behalf and on behalf of their successors and assigns, hereby: (i) release each of the Section A Parties, and each of their heirs, successors and assigns (collectively the "Section A Releasees"), from all claims, causes of action, suits, debts, dues, sums of money, accounts, bonds, bills, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, demands and liabilities of any type in law or in equity that the Estate Releasors and the Erna Leir Executors or any one or more of them has or ever had or may have against the Section A Releasees or any one or more of them at any time through and including the date of payment of the aforesaid amounts, except as set forth in paragraph 8 of this Section A and except for claims that may otherwise arise under this Settlement Agreement.

(c) Upon the Payment Date and the payment of the Section A Settlement Amount plus any additional amounts as specified in paragraph 5 of this Section A, the Foundations, on their own behalf and on behalf of all successors and assigns of the Foundations or either of them (together the "Foundation Releasors"), hereby release the Section A Releasees from all claims, causes of action, suits, debts, dues, sums of money, accounts, bonds, bills, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, demands and

571022v9

liabilities of any type in law or in equity that the Foundation Releasors or any one or more of them has or ever had or may have against the Section A Releasees or any one or more of them at any time through and including the date of payment of the aforesaid amounts, except as set forth in paragraph 8 of this Section A, and except for claims that may otherwise arise under this Settlement Agreement.

(d)     Upon the Payment Date and the payment of the Section A Settlement Amount plus any additional amounts as specified in paragraph 5 of this Section A, the Section A Releasors and Holland & Knight LLP hereby release the Section B Parties and the Section C Parties, including their heirs, successors, and assigns, from all claims, causes of action, suits, debts, dues, sums of money, accounts, bonds, bills, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, demands and liabilities of any type in law or in equity that the Section A Releasors and Holland & Knight LLP or any one or more of them has or ever had or may have, at any time through and including the date of payment of the aforesaid amounts, that relate to or arise out of the Henry Leir Estate or the Erna Leir Estate, except for (a) claims that may arise under this Settlement Agreement, and (b) their rights, if any, with respect to trusts under the Erna Leir Will in which they have or may have an interest, beneficial, fiduciary or otherwise. The foregoing release shall not be operative until and only to the extent that the Section B Parties and the Section C Parties have executed the releases contained in this Settlement Agreement running from them and each of them to the Section A Releasors.

8.     <u>The Luxembourg Bank Account, the Venthone Property, and Sadem.</u>

(a)     Notwithstanding the foregoing releases, the Henry Leir Estate, the Preliminary Co-Executors, the Foundations, and Marcelo Leipziger (together the "Swiss Claim Parties")

13

571022v9

agree as set forth hereinafter:

(i) The Swiss Claim Parties reserve any and all claims, counterclaims, offset claims and defenses relating to (a) certain real property located in Venthone, Switzerland ("Venthone"), including claims and defenses which relate to that certain Agreement between Henry Leir as Seller and Marcelo Leipziger as Purchaser dated September 18, 1989 (the "Venthone Agreement"), (b) the transfer of title in or to Venthone to or by Marcelo Leipziger, (c) any loan transactions by the Sadem Corporation ("Sadem") involving Henry Leir as borrower, and (d) any claim, counterclaim, offset claim, or claim for recoupment of any amount paid hereunder to Marcelo Leipziger on the grounds that such amount should have been further reduced pursuant to the terms of the November 13, 1987 Will of Henry J. Leir (all of the claims, counterclaims, offset claims, and defenses referenced in this paragraph are collectively referred to hereinafter as the "Swiss Claims"); and

(ii) The Swiss Claim Parties agree that said Swiss Claims are to be resolved independently from this Settlement Agreement, the Declaratory Judgment Action, and the Probate Proceeding.

(iii) For purposes of any of the Swiss Claims, Marcelo Leipziger, the Preliminary Co-Executors, and the Foundations hereby stipulate and agree for all purposes and as admissible evidence that, upon payment of the Section A Settlement Amount, Marcelo Leipziger: (A) will be deemed to have received the full amount of $200,000 specified in paragraph 2(b)(2) of the Venthone Agreement; and in addition (B) will be deemed to have received $762,000, which will be deemed, for purposes of the Swiss Claims, to be the discounted present value of a fraction (shown in Exhibit B hereto) of his remainder interest under paragraph FOURTH (B)(i) of the 1987 Will and Codicils of Henry Leir pursuant to enforcement of the 1988 Letter as a contract.

14

Nothing herein shall preclude or compromise: (A) Marcelo Leipziger's claim that his obligation as specified in paragraph 2(b)(3) of the Venthone Agreement should be reduced for purposes of the Venthone Agreement because he would have received a greater amount at a later date under the 1987 Will and Codicils of Henry Leir if the 1988 Letter were enforced as a contract; or (B) any denial or defense of the Preliminary Co-Executors and/or the Foundations against any such allegation or claim of Marcelo Leipziger.

(b) Without limiting the generality of the foregoing releases in this Section A, at the time this Settlement Agreement is executed by Marcelo Leipziger, he shall deliver to Holland & Knight LLP to be held in escrow an original unconditional notarized or apostilled release (the "Account Release") of any and all claims to what is now or was formerly Account Number 851.857 at what is now or was formerly Republic National Bank of New York (Luxembourg) S.A., including any amounts earned thereon or proceeds thereof (the "RNB Account"). Upon payment of the Section A Settlement Amount, Marcelo Leipziger and the other Section A Parties hereby release any and all claims to the RNB Account, including any amounts earned thereon or proceeds thereof, and Holland & Knight LLP shall deliver the original Account Release to counsel for the Preliminary Co-Executors, and Marcelo Leipziger agrees to subsequently execute any other documents which are needed to facilitate the transfer of title to the RNB Account and all funds therein as directed by the Preliminary Co-Executors.

9. <u>Section A Proportionality Representation</u>. The Preliminary Co-Executors hereby:

(a) Represent and covenant as follows: The Section B Settlement Amount, as defined in Section B, was calculated by first constructing a fraction, the numerator of which was the aggregate amount to be paid to the Section A Parties ($6,150,000, exclusive of legal fees and expenses) and the denominator of which was the maximum 100% recovery (as calculated by the

13. <u>Counterparts</u>. This Settlement Agreement may be executed in counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

14. <u>Delivery of Additional Documents</u>. Each of the Settling Parties hereto shall at any time and from time to time hereafter execute and deliver any and all further documents, instruments and assurances and perform any acts that the other Settling Parties may reasonably request for the purpose of giving full force and effect to the provisions of this Settlement Agreement.

15. <u>Governing Law</u>. The Settling Parties hereby agree that this Settlement Agreement shall be construed in accordance with and governed by the laws of the State of New York.

IN WITNESS WHEREOF, the parties hereto have caused this Settlement Agreement to be duly executed as of the date and year first above written.

_____
ARTHUR S. HOFFMAN,
as Preliminary Co-Executor of the Last Will and Testament of Henry J. Leir dated April 27, 1998, and as Trustee under the Last Will and Testament of Erna Leir, dated November 13, 1987, as amended by four Codicils thereto

_____
MARGOT GIBIS,
as Preliminary Co-Executor of the Last Will and Testament of Henry J. Leir dated April 27, 1998

_____
RONALD P. STANTON,
as Executor of the Estate of Erna D. Leir

_____
MARGUERITE M. RIPOSANU,
as Executor of the Estate of Erna D. Leir

_____
ADRIAN SHELBY as Executrix of the Estate of Jerome Shelby

_____
ROBERT SITKOFF

_____
JEREMY SITKOFF

_____/s/ M. Leipziger_____
MARCELO LEIPZIGER

---

KAREN SHELBY ANDERSON

---

P. AUSTIN SHELBY

---

RACHEL G. HOFFMAN

---

DOUGLAS H. HOFFMAN

THE RIDGEFIELD FOUNDATION, INC.

By: *Arthur S. Hoffman* (signature)
    ARTHUR S. HOFFMAN

THE LEIR FOUNDATION, INC.

By: *Arthur S. Hoffman* (signature)
    ARTHUR S. HOFFMAN

HOLLAND & KNIGHT LLP

By:_____
    CHARLES F. GIBBS, Esq.

SHEARMAN & STERLING LLP

By:_____
    ANDREW W. REGAN, Esq.

NO OBJECTION

_____
Attorney General

39

571022v9

Exhibit A

**Estate of Henry J. Leir**

The Settlement Agreement pursuant to which the Section A Parties release their claims provides the Section A Parties with $6,150,000, exclusive of legal fees and expenses.

What would the Section B Parties receive under the proportionality standard?

|  | 100%* |
|---|---:|
| **Section A Parties** | |
| Cash Equivalent In Lieu of Remainder** | $4,483,000 |
| Cash Legacies | 3,030,000 |
| Interest on Cash Legacies | 664,000 |
| Total to Section A Parties | $8,177,000 |
| | |
| **Section B Parties** | |
| Cash Equivalent in Lieu of Remainder** | $1,857,000 |
| Cash Legacies | 1,700,000 |
| Interest on Cash Legacies | 373,000 |
| Total to Section B Parties | $3,930,000 |

Computation of Section B Parties' Proportionate Settlement Amount to Section A Parties' Settlement Amount of $6,150,000:

| Settlement Amount to Section A Parties | 6,150,000 | = | 75.21% |
|---|---|---|---|
| Maximum Recovery to Section A Parties | 8,177,000 | | |
| | | | |
| Settlement Amount to Section B Parties | 2,956,000 | = | 75.21% |
| Maximum Recovery to Section B Parties | 3,930,000 | | |

The percentage of the maximum recovery paid to the Section A Parties is 75.21% of their maximum recovery.
The percentage of the maximum recovery paid to the Section B Parties is 75.21% of their maximum recovery.

---

\*     The Section A Parties do not concede that this is the maximum 100% recovery, and thus this amount is for settlement purposes only.

\*\*    Discounted present value, based on 6.8% discount rate, as adjusted.

## Exhibit B

**Estate of Henry J. Leir**

The Settlement Agreement pursuant to which the Section A Parties release their claims provides the Section A Parties with $6,150,000, exclusive of legal fees and expenses.

Based on the Preliminary Co-Executors' calculation of the Section A Parties' maximum 100% recovery, this represents the following fractional satisfaction of the Section A Parties' claims:

| Section A Parties | 100%* | Actual | % Satisfaction |
|---|---|---|---|
| Cash Equivalent In Lieu of Remainder** | $4,483,000 | $2,456,000 | 54.8% |
| Cash Legacies | 3,030,000 | 3,030,000 | 100.0% |
| Interest on Cash Legacies | 664,000 | 664,000 | 100.0% |
| Total to Section A Parties | $8,177,000 | $6,150,000 | 75.21% |
|  |  |  |  |

---

\* The Section A Parties do not concede that this is the maximum 100% recovery, and thus this is for settlement purposes only.

\*\* Discounted present value, based on 6.8% discount rate, as adjusted.

571022v9